Grafton
No. 2006-396

KOOR COMMUNICATIONS, INC.

v.

CITY OF LEBANON

Argued: January 18, 2007
Opinion Issued: June 22, 2007

*Bolton Law Offices, PLLC*, of Nashua (*Steven A. Bolton* on the brief and orally) and *Fred Hopengarten*, of Lincoln, Massachusetts, by brief and orally, for the plaintiff.

*Gardner, Fulton & Waugh, P.L.L.C.*, of Lebanon (*H. Bernard Waugh, Jr.* on the brief and orally), for the defendant.

HICKS, J. The plaintiff, Koor Communications, Inc., appeals an order of the Superior Court (*Vaughan*, J.) denying its motion for attorney's fees. We affirm.

The following facts appear in the trial court's order or are supported in the record before us. The plaintiff commenced this action by filing a petition for declaratory judgment on March 5, 1999. The petition alleged, among other things, the following: The plaintiff was the holder of a Federal Communications Commission (FCC) Permit to build an AM broadcast station with 266-foot radio transmitter towers in Lebanon. The zoning ordinance of the defendant, the City of Lebanon (City), "effectively prohibit[ed] all new radio towers" in Lebanon. The plaintiff applied for a variance, but was denied. The petition claimed, among other things, federal preemption, and violation of free speech rights and "the express requirements of federal and state law allowing radio broadcasts."

After its claims were disposed of by summary judgment, the plaintiff appealed and we affirmed in part, reversed in part and remanded. *See Koor Communication v. City of Lebanon*, 148 N.H. 618 (2002). We concluded that the City's zoning ordinance was preempted because "for anyone seeking to operate a new FCC-licensed AM station in the city, compliance with both the zoning ordinance and federal law is a physical impossibility." *Id.* at 622.

On remand, the plaintiff moved for attorney's fees, claiming that it was a prevailing party entitled to attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988. The trial court denied the motion, noting that prior to the plaintiff's motion for fees, it had neither pled nor raised any claims under sections 1983 or 1988. Therefore, the court ruled, it did not need to reach the plaintiff's substantive arguments on whether 42 U.S.C. § 1983 and § 1988 apply here.

"We review the trial court's award of attorney's fees under an unsustainable exercise of discretion standard, giving deference to the trial court's decision." *Van Der Stok v. Van Voorhees*, 151 N.H. 679, 683 (2005) (quotation omitted). Before turning to the merits of the appeal, we first examine the applicable statutes. 42 U.S.C. § 1988 (2000) provides, in

pertinent part: "In any action or proceeding to enforce a provision of section[] . . . 1983 . . . of this title . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ." 42 U.S.C. § 1988(b). 42 U.S.C. § 1983 (2000), in turn, provides, in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

The plaintiff argues that the trial court erred in denying its request for attorney's fees for failure to previously raise either 42 U.S.C. § 1983 or 42 U.S.C. § 1988 in its pleadings. The plaintiff correctly notes that the prayer for relief in its petition for declaratory judgment requested that "the Plaintiff be awarded attorney's fees in this action." It then contends, citing *Morency v. Plourde*, 96 N.H. 344, 346 (1950), that under New Hampshire law, this adequately informed the City of its claim for redress. It also argues that under federal law, it was not required to specifically cite 42 U.S.C. § 1983 or 42 U.S.C. § 1988. In support, it cites the following conclusion of the Sixth Circuit Court of Appeals:

> Section 1988 is concerned with the substance of a prevailing party's action rather than the form in which it is presented. The mere failure to plead or argue reliance on § 1983 is not fatal to a claim for attorney's fees if the pleadings and evidence do present a substantial Fourteenth Amendment claim for which § 1983 provides a remedy, and this claim is related to the plaintiffs' ultimate success.

*Berger v. City of Mayfield Heights*, 265 F.3d 399, 404 (6th Cir. 2001) (quotation and brackets omitted).

Assuming, without deciding, the Sixth Circuit's conclusion to be valid, we note that the plaintiff must still present a claim "for which § 1983 provides a remedy." *Id.* The plaintiff concedes that this is a case of first impression, but argues that it meets the criteria established by the United States Supreme Court for determining whether a particular statute or regulation creates a right that is enforceable under 42 U.S.C. § 1983.

 The plaintiff cites the *Blessing* test, *see Blessing v. Freestone*, 520 U.S. 329 (1997), a three-factor inquiry to guide the determination of whether a statute establishes such a right:

[1] Congress must have intended that the provision benefit the plaintiff, [2] the plaintiff must demonstrate that the right assertedly protected by the statute is not so vague and amorphous that its enforcement would strain judicial competence, and [3] the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.

*Gonzaga Univ. v. Doe*, 536 U.S. 273, 282 (2002) (quotations omitted). In *Gonzaga University*, the Supreme Court clarified that "if Congress wishes to create new rights enforceable under § 1983, it must do so in clear and unambiguous terms—no less and no more than what is required for Congress to create new rights enforceable under an implied private right of action." *Id.* at 290. Looking, then, to the caselaw involving private rights of action, the Supreme Court has noted:

[T]he question whether Congress intended to create a private right of action is definitively answered in the negative where a statute by its terms grants no private rights to any identifiable class. For a statute to create such private rights, its text must be phrased in terms of the persons benefited.

*Id.* at 283-84 (citation, quotations, brackets and ellipsis omitted). Applying the above-cited test, we conclude that the Federal Communications Act of 1934, as amended, 47 U.S.C. §§ 151-613 (2000), does not confer upon the plaintiff private rights enforceable under 42 U.S.C. § 1983.

We need not go further than the first factor—that Congress intended that the provision benefit the plaintiff. *See Gonzaga Univ.*, 536 U.S. at 282. The Ninth Circuit Court of Appeals noted in *Howard v. City of Burlingame*, 937 F.2d 1376, 1379 (9th Cir. 1991):

In the [Federal Communications Act of 1934], Congress defined its intended beneficiaries as "all the people of the United States," and described its purposes as promoting national defense, safety of life and property, and centralizing regulatory authority over the airwaves. 47 U.S.C. § 151.... [T]he Act is thus intended to benefit the general public, as opposed to any individual operator.

The Supreme Court has also stated that "[t]he Communications Act of 1934 did not create new private rights. The purpose of the Act was to protect the public interest in communications." *Scripps-Howard Radio v.*

*Federal Communications Comm'n*, 316 U.S. 4, 14 (1942); *see also Howard*, 937 F.2d at 1379 (noting same).

The plaintiff cites no specific provision of the Federal Communications Act of 1934 that it claims entitles it to a right enforceable under 42 U.S.C. § 1983, but rather contends that the "instant case involves AM broadcasting, governed by" 47 C.F.R. §§ 73.45, 73.189 and 73.190 (2006). It is unclear whether a regulation alone can create a right enforceable under 42 U.S.C. § 1983. "Although the circuits are divided on the question, the majority have determined that where a regulation's enforcing statute confers no federal right, the regulation alone cannot create a right enforceable under § 1983." *D.D. ex rel. V.D. v. New York City Bd. of Educ.*, 465 F.3d 503, 513 (2d Cir. 2006), *amended in unrelated part on denial of rehearing*, 480 F.3d 138 (2d Cir. 2007).

In any event, we need not address the issue, as we have examined 47 C.F.R. §§ 73.45, 73.189 and 73.190 and see no intent, expressed "in clear and unambiguous terms," *Gonzaga Univ.*, 536 U.S. at 290, to benefit the plaintiff. 47 C.F.R. § 73.45 details the requirements that applicants for AM station facilities and certain existing licensees must meet regarding the specification of antenna systems. "Section 73.45 requires that [such applicants] shall specify a radiating system, the efficiency of which complies with the requirements of good engineering practice for the class and power of the station." 47 C.F.R. § 73.189(a). 47 C.F.R. §§ 73.189 and 73.190, entitled "Minimum antenna heights or field strength requirements" and "Engineering charts and related formulas," respectively, set forth technical requirements related to such antenna systems. None of these regulations "grants ... private rights to any identifiable class" or is "phrased in terms of the persons benefited." *Gonzaga Univ.*, 536 U.S. at 284 (quotations omitted).

The plaintiff urges us to look to "satellite TV dish antenna cases which allowed § 1983 recovery of fees when the municipality ignored FCC regulations," and cites *Loschiavo v. City of Dearborn*, 33 F.3d 548 (6th Cir. 1994), *cert. denied*, 513 U.S. 1150 (1995), and *Ermler v. Brookhaven*, 780 F. Supp. 120 (E.D.N.Y. 1992). Assuming these cases were correctly decided, we decline to adopt the reasoning therein in this case. *Loschiavo* and *Ermler* turn upon the specific language of 47 C.F.R. § 25.104, which, in turn, is a product of the Cable Communications Policy Act of 1984. *Loschiavo*, 33 F.3d at 551.

> The 1984 Act was passed in part to promote the growth of satellite programming and to facilitate individual reception of unencrypted satellite signals. In view of this goal, Congress

amended the Communications Act to authorize the receipt of unscrambled satellite programming for private viewing. . . .

. . . .

Shortly thereafter, the FCC, concluding that local regulations regularly interfered with the right recognized by the 1984 Act to receive satellite signals for home viewing, adopted a rule preempting discriminatory local ordinances.

*Id.* at 551-52 (citation omitted). In light of this background, the *Loschiavo* court concluded: "We have no doubt that the Loschiavos, as the owners of a satellite antenna used to receive programming for home viewing, were intended beneficiaries of this regulation." *Id.* at 552.

By contrast, as the plaintiff itself recognizes elsewhere in its brief, the purpose of "[t]he FCC's regulation of minimum antenna heights [in 47 C.F.R. §§ 73.45, 73.189 and 73.190 is] to avoid interference with other stations on the same or nearby frequencies." This is entirely consistent with the purpose, stated in 47 U.S.C. § 151, of "mak[ing] available, so far as possible," radio service "to all the people of the United States." In other words, it is entirely consistent with an intention to benefit the listening public, rather than the broadcaster. *Cf. Howard*, 937 F.2d at 1379. The plaintiff has cited no statute, regulation or legislative history suggesting a contrary intent.

■ We conclude that the plaintiff has failed to establish that either the Federal Communications Act of 1934 or 47 C.F.R. §§ 73.45, 73.189 or 73.190 satisfy the first factor of the *Blessing* test—that Congress intended that the provision benefit the plaintiff. *See Gonzaga Univ.*, 536 U.S. at 282. Accordingly, the plaintiff has failed to establish a right enforceable under 42 U.S.C. § 1983 and is not entitled to attorney's fees under 42 U.S.C. § 1988.

The plaintiff nevertheless argues in its reply brief that it "made two constitutional arguments early on and carried them forward," and that it is entitled to § 1988 fees on either of those claims. The first argument, which the plaintiff contends this court "never reached" in the prior appeal, is a First Amendment claim. Specifically, the plaintiff argues that as "a broadcaster, [it] was deprived of its First Amendment right of free speech by means of a City zoning ordinance which prevented the erection of an antenna system tall enough to meet the Federal requirements set forth in" 47 C.F.R. §§ 73.45, 73.189 and 73.190.

In its June 25, 2001 order on the defendant's motion for summary judgment, the trial court ruled that the City's zoning ordinance did not restrict free speech, having "previously ruled that the zoning ordinance is a permissible content-neutral restriction on the plaintiff's state and federal

rights to free speech." Thus, the plaintiff did not prevail on its First Amendment claim. Accordingly, it is not entitled to fees on this basis. *See* 42 U.S.C. § 1988 (authorizing fees to prevailing party).

The plaintiff's second argument is that "preemption is itself a constitutional claim upon which [it] prevailed" and upon which it is therefore entitled to § 1988 fees. We disagree. In *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103 (1989), the Supreme Court clarified that "the Supremacy Clause, of its own force, does not create rights enforceable under § 1983." *Id.* at 107 (footnote omitted).

> That clause is not a source of any federal rights; it secures federal rights by according them priority whenever they come in conflict with state law. Given the variety of situations in which pre-emption claims may be asserted, in state court and in federal court, it would obviously be incorrect to assume that a federal right of action pursuant to § 1983 exists every time a federal rule of law pre-empts state regulatory authority.

*Id.* at 107-08 (quotations, citations, footnote and brackets omitted). Thus, we reject the plaintiff's contention that its success on the preemption claim alone entitles it to attorney's fees under § 1988.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and GALWAY, JJ., concurred.