53 F.3d 331
 150 L.R.R.M. (BNA) 2960
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Ralph A. MCINNES, Plaintiff-Appellant,
v.
JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Defendant-Appellee.
 No. 94-3178.
 United States Court of Appeals, Sixth Circuit.
 May 3, 1995.
 
 Before: KEITH, MARTIN, and GUY, Circuit Judges.
 PER CURIAM.
 
 
 1
 Ralph McInnes challenges the district court's decision granting summary judgment in favor of John Hancock Mutual Life Insurance Co. on McInnes' unlawful discharge claim pursuant to Section 301 of the Labor Management Relations Act (29 U.S.C. Sec. 185), and the court's decision granting summary judgment in favor of the United Food and Commercial Workers International Union, AFL-CIO and CLC, on McInnes' breach of duty of fair representation claim. For the following reasons, we AFFIRM the decision of the district court.
 
 
 2
 The events leading to this litigation may be summarized as follows. McInnes worked for John Hancock as a marketing representative from March 1982 to June 1991 when he was discharged. The Union was the certified collective bargaining representative for the bargaining unit of marketing representatives at the time of these events. McInnes was discharged for allegedly engaging in financial dealings not in a client's best interests. McInnes, who was President of the local union and District Office chairperson at the time, protested his discharge to the Union. McInnes alleged he was discharged for his union activities. The Union filed a grievance on McInnes' behalf, pursuant to the grievance procedure in the collective bargaining agreement. The grievance was denied at each step of the three-step grievance process. Article VI of the collective bargaining agreement provides that the Union may pursue arbitration if the grievance is denied in the Third Step.[1]
 
 
 3
 In this case, William Gerhauser, the union official responsible for the nationwide administration of the contract with John Hancock, decided not to pursue arbitration of McInnes' grievance. Throughout the course of the grievance proceedings, however, Gerhauser conducted an investigation of the matter. Gerhauser had union field representative James Fuchs assist him in conducting an investigation and also consulted other union officials to evaluate McInnes' claim and to decide what action to take.
 
 
 4
 McInnes claims that the court erred in determining, as a matter of law, that the grievance procedure under the collective bargaining agreement (the "contract") between the Union and John Hancock provides the exclusive and final remedy for a breach of the contract. The district court held that the three-step grievance procedure, and the contractual provision permitting the Union to pursue arbitration, is the exclusive and final remedy for an employee such as McInnes claiming wrongful termination under Article IX. Given the district court's decision that the contractual grievance procedure is the final and exclusive remedy, the court also decided that McInnes could not pursue a Section 301 claim because he failed to show that the union had breached its duty of fair representation. McInnes claims the district court did not consider the evidence, in a light most favorable to him, which showed that "the grievance procedure regarding McInnes' discharge was wholly futile to determine the merit of the grievance." He argues that, because some of the same people who discharged him were also involved in deciding the merits of his grievance, exhaustion of the contractual grievance procedure is not required as a prerequisite to his being able to pursue a Section 301 claim in federal court.
 
 
 5
 We review the decision of a district court to grant summary judgment de novo. Loschiavo v. City of Dearborn, 33 F.3d 548, 550 (6th Cir. 1994), cert. denied, 115 S. Ct. 1099 (1995). Summary judgment is appropriate only if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. In determining whether the district court properly granted summary judgment, we must consider all the evidence before us in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).
 
 
 6
 Here, the district court determined that, as a matter of contract interpretation, Article V of the collective bargaining agreement provided a final and exclusive grievance procedure for marketing representatives such as McInnes.[2] We agree that this provision shows an intent by the Union and John Hancock that the grievance procedure be exclusive and final. Furthermore, we agree that the "Availability of Other Remedies" provision in Article V applies only as to the Union or John Hancock, and not to individual employees. The language of Article V, taken together with the rule that any doubts about the exclusivity of contractual grievance procedures are to be resolved in favor of finding such procedures to be exclusive, Republic Steel Corp. v. Maddox, 379 U.S. 650, 658-59 (1965), leads us to agree that McInnes is bound by the decision reached via the grievance procedure, absent a showing that the union breached its duty of fair representation, Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 562-63 (1976), or that John Hancock repudiated the contractual remedial procedures. Vaca v. Sipes, 386 U.S. 171, 185-86 (1967).
 
 
 7
 In order to prove a breach of the duty of fair representation, McInnes must show that the union acted arbitrarily, discriminatorily, or in bad faith. Walk v. P*I*E Nationwide, Inc., 958 F.2d 1323, 1326 (6th Cir. 1992) (citing Vaca v. Sipes, 386 U.S. 171 (1967)). Mere errors of judgment will not suffice to meet this standard. Id. McInnes argues that the Union breached its duty of fair representation by arbitrarily ignoring a meritorious grievance and treating it in a perfunctory manner. McInnes believes that the union failed to make a reasonable investigation into the allegations against him. He insists that had the Union properly investigated it would have decided to go forward to arbitration. McInnes also claims that the Union ignored evidence that he was discharged for his union activity.
 
 
 8
 The Supreme Court has said that a union's actions are arbitrary only if "in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational." Id. (citing Airline Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65 (1991). The record in this case shows that the "Union," including McInnes as a union official,[3] knew of the facts from McInnes' point of view and that union officials conducted an investigation into McInnes' discharge. The district court found that McInnes did not refute the facts alleged by John Hancock on pages 13-15 of its brief showing that Gerhauser directed and conducted investigation of this matter. Furthermore, the union represented McInnes at each step of the process, arguing that John Hancock had wrongfully discharged McInnes. After reviewing the record, we reach the same conclusion. As to the claim that McInnes was discharged for union activity, McInnes states in his brief that the Union, through Gerhauser, determined that there was not enough evidence showing that McInnes was discharged for union activity.[4] Essentially, McInnes disagrees with the Union as to the meaning of the facts and with the Union's decision (by Gerhauser) not to pursue arbitration. Based on this record, we cannot say that the Union's actions regarding the grievance procedure, including its decision not to pursue arbitration, were irrational. Therefore, we agree with the district court that the union did not breach its duty to McInnes.
 
 
 9
 Finally, McInnes claims, correctly, that the exclusivity and finality of a contractual grievance procedure is not a bar to pursuing a Section 301 action where it is wholly futile for an employee to do so. Glover v. St. Louis-San Francisco Railway Co., 393 U.S. 324, 330-31 (1969) (holding that employees need not exhaust contractual remedies where the bargaining representative and the employer colluded to deny promotions to employees). This is not a case like Glover where collusion by the bargaining representative and the employer made it wholly futile for the employees to pursue the contractual grievance procedure. Here, the Union's decision not to pursue arbitration was made by a union official (Gerhauser). McInnes does not allege that Gerhauser was in collusion with or conspired with John Hancock to deny McInnes any contractual rights. Furthermore, there is no evidence of any such conspiracy or collusion between the Union and John Hancock. Therefore, this exception to the exhaustion requirement is not applicable.
 
 
 10
 Because we believe the contractual grievance procedure to be the exclusive and final remedy for McInnes, and because the facts he alleges do not show a breach of the union's duty of fair representation, we AFFIRM the decision of the district court granting summary judgment to the defendant.
 
 
 
 [1]
 "If a grievance is not settled in the Third Step of the grievance procedure, then the Union may notify the Company of its intent to submit the grievance to arbitration." J.A. at 494
 
 
 [2]
 "All grievances between the Marketing Representative and/or the Union and the Company shall be disposed of in accordance with the following procedure in this Article. Grievances involving the termination of a Marketing Representative's employment for any reason shall be processed in accordance with the procedure set forth herein...." (emphasis added)
 
 
 [3]
 McInnes was one of the Union's representatives at the Second step meeting in the grievance procedure. "The union committee consisted of Ralph McInnes, James Fuchs and Glenn Cantor." Appellant's Brief at 10
 
 
 [4]
 "Gerhauser testified that he dismissed the allegations that McInnes was discharged for his union activity because of the lack of evidence. R. 88, 89, 90, 91." Appellant's Brief at 39